UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| BORIS K. PEREDO AND<br>TIFFANY MARIE PEREDO | § § § | CIVIL ACTION NO: |
| *Plaintiffs* | § § | |
| v. | § § | |
| FOREST RIVER, INC. | § § § | |
| *Defendants* | § | JURY TRIAL REQUESTED |

## COMPLAINT

### I. Parties

1. Plaintiffs, BORIS K. PEREDO and TIFFANY MARIE PEREDO, are individuals that now and have been at all times citizens of the state of Virginia.

2. Defendant, FOREST RIVER, INC., hereinafter "FOREST RIVER," is an Indiana corporation that was incorporated in the state of Indiana and is a citizen of the state of Indiana. Its principal place of business is located in the state of Indiana and is a warrantor of the recreational vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case.

FOREST RIVER's agent for service of process is Darrel O. Ritchie, 900 County Road 1, Elkhart, IN, 46514.

### II. Jurisdiction

3. This Court has federal question jurisdiction over the lawsuit under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d); and 28 USC § 1331 in that the disputes involve predominant issues of federal law.

-1-

This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiffs and the Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiffs's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

### III.   Venue

4. Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

### IV.   Conditions Precedent

5. All conditions precedents have been performed or have occurred.

### V.   Facts

#### A.   The Transaction

6. On May 17, 2023, Plaintiffs purchased a new 2023 FOREST RIVER ALPHA WOLF 26RL-L bearing VIN: 5ZT2CKRB2P2011837, hereinafter "ALPHA WOLF," from CAMPING WORLD RV SALES.

The ALPHA WOLF was purchased primarily for Plaintiffs's personal use. The purchase price was $50,884.30. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law.

See ***Hughes v. Segal Enterprises, Inc.***, **627 F. Supp. 1231, 1238 (W.D. Ark. 1986);** ***Chariton Vet Supply, Inc. v. Moberly Motors Co.***, **2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

### B.  Implied Warranties

7. As a result of the sale of the ALPHA WOLF by Defendants to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the ALPHA WOLF would pass without objection in the trade under the contract description; and that the ALPHA WOLF was fit for the ordinary purpose for which such ALPHA WOLF are purchased.

8. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C.  Express Warranties

9. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the ALPHA WOLF occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the ALPHA WOLF had, in fact, repaired the defects.

10. Plaintiffs' purchase of the ALPHA WOLF was accompanied by express warranties offered by the Defendants, ALPHA WOLF, and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs's contract for purchase of the ALPHA WOLF.

11. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be

made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in the ALPHA WOLF's warranty booklet and owners manual.

### D.   Actionable Conduct

12. In fact, when delivered, the ALPHA WOLF was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to, the following statement in the Plaintiffs' own words:

> **1.   SLIDE OUT CABLE DEFECTS, NON-CONFORMITIES AND CONDITIONS;**
>
> **2.   ANY AND ALL DEFECTS, NON-CONFORMITIES AND CONDITIONS LISTED ON ANY REPAIR ORDER.**
>
> **6.   TOTAL OUT-OF-SERVICE DAYS - OVER 270.**"

13. Since purchase, Plaintiffs have returned his ALPHA WOLF to the Defendants and its authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which Defendants were given the opportunity to repair the ALPHA WOLF the more significant and dangerous conditions were not repaired. Defendants failed to repair the ALPHA WOLF so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the ALPHA WOLF continues to this day to exhibit some or all of the non-conformities described herein.

14. The defects experienced by Plaintiffs with the ALPHA WOLF substantially impaired its use, value and safety.

15. Plaintiffs directly notified the Defendants of the defective conditions of the ALPHA WOLF. Plaintiffs notified the Defendants that they wanted a rescission of the sale of ALPHA WOLF but the Defendants has failed and refused to buy back Plaintiffs' defective ALPHA WOLF.

## VI. Causes of Action

**COUNT 1: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

16. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

17. Plaintiffs is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

18. Defendants, ALPHA WOLF, is a "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

19. The ALPHA WOLF is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

20. The express warranties more fully described hereinabove pertaining to the ALPHA WOLF is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

21. The actions of Defendants in failing to tender the ALPHA WOLF to Plaintiffs free of defects and refusing to repair or replace the ALPHA WOLF tendered to Plaintiffs constitute a breach of the written and implied warranties covering the ALPHA WOLF and hence a violation of the Magnuson-Moss Warranty Act.

22. Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of

Defendants as herein alleged.

23. As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth hereinabove, Plaintiffs have been damaged hereinabove in an amount in excess of $500,000.00 according to proof at trial.

24. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs is entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:   BREACH OF EXPRESS WARRANTIES**

25. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs those similarly situated were free from inherent risk of failure or latent defects. In addition, the Defendants issued an expressed written warranty which covered ALPHA WOLF, and warranted that the ALPHA WOLF, was free of defects in materials and work quality at the time of delivery.

26. The Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs's ALPHA WOLF was free of defects in materials and work quality at the time of delivery.

27. As alleged above, the Defendants breached its warranties by offering for sale, and selling as safe to Plaintiffs a ALPHA WOLF that was latently defective, unsafe, and likely to cause

-6-

economic loss to Plaintiffs.

28. In breach of the foregoing warranties, the Defendants has failed to correct said defects.

29. The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the ALPHA WOLF; costs of repairs; expenses associated with returning the ALPHA WOLF for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 3:  BREACH OF IMPLIED WARRANTIES**

30. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

31. The Defendants impliedly warranted that Plaintiffs' ALPHA WOLF which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

32. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants are unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the ALPHA WOLF had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects from Plaintiffs.

33. Because of the defects, Plaintiffs's ALPHA WOLF is unsafe and unfit for use and has caused economic loss to the Plaintiffs. Therefore, the Defendants breached the implied warranty of merchantability.

34. The damages Plaintiffs have suffered are a direct and proximate result of

-7-

Defendants's actions in this matter include, but are not limited to, diminution in value of the ALPHA WOLF; costs of repairs; expenses associated with returning the ALPHA WOLF for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### VII.    Economic and Actual Damages

35.    Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

  a.. Out of pocket expenses, including but not limited to the money paid towards the note securing the ALPHA WOLF;

  b. Loss of use;

  c. Loss of the "benefit of the bargain";

  d. Diminished or reduced market value; and

  e. Costs of repairs.

### VIII.    Attorney Fees and Costs

36.    Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

### IX.    Prayer

37.    For these reasons, Plaintiffs prays for judgment against the Defendants for the following:

-8-

a.  For general, special and actual damages according to proof at trial;

b.  Rescinding the sale of the 2023 FOREST RIVER ALPHA WOLF 26RL-L bearing VIN: 5ZT2CKRB2P2011837 and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

c.  For incidental and consequential damages according to proof at trial;

d.  Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

e.  Any diminution in value of the ALPHA WOLF attributable to the defects;

f.  Past and future economic losses;

g.  Prejudgment and post-judgment interest;

h.  Damages for loss of use of ALPHA WOLF;

i.  Civil Penalties and/or Punitive damages;

j.  Damages for mental anguish;

k.  Attorney fees;

l.  Costs of suit, expert fees and litigation expenses; and

m   All other relief this Honorable Court deems appropriate.

## X.  Demand for Jury Trial

38.  Plaintiffs hereby demand a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS

-10-

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2024, I electronically filed this document through the CM/ECF system, which will send a notice of electronic filing to all parties through their attorney of record on file with the court.

_____*Richard C. Dalton*_____
RICHARD C. DALTON